Good morning, Judge. May it please the Court, my name is Jill Thorpe, I represent the appellant who is Jose Medina-Carrasco. I'm going to try to reserve two minutes of my time for rebuttal. In 2013, Jose was arrested for illegal re-entry after deportation. Jose is a Spanish speaker, so he was appointed a Spanish-speaking attorney. The attorney brought him a plea agreement. It's probably a plea agreement that at least two of you have seen before. Counsel, let me get right to the point that is of concern to me regarding the plea waiver. The trial counsel specifically agreed that this was a level 24, and your client was informed that he could get up to 87 months under the plea agreement, and he said he understood that. I have a hard time when his own lawyer, whether rightly or wrongly, said this is a 24 and here are the reasons he should get a lower sentence because of all these mitigating factors, and, in fact, he did get a lower sentence. How could that not be in accordance with the agreement when he, his own lawyer, said here it is? Well, I think one of the cases to look to is a case that I think that you were involved in. It's an unpublished case, and that was Aguilar-Balbuena. But I don't think that — I don't remember the facts of it precisely, but I don't recall it as one where the lawyer expressly said in open court, we agree that this is the — this is how the agreement works and this is where he belongs. And it just seems to me quite difficult in that circumstance. I understand what you're saying. And my position is, though, that even when there is a situation where the lawyer agrees, if there is ineffective assistance of counsel, which I believe is the case regarding his decision about the crime of violence, coupled with the fact that it appears that the judge also, on the record at least, did no analysis of whether it was a crime of violence. When I read the record — Well, his lawyer said, listen, he struck a police officer with the intent to injure him. So, I mean, I think they were all on that page. But I think that that's the wrong page. In other words, for a crime of violence, DeCamp specifically says that you're not going to look at the specific facts of the case. Except if we were to accept your argument, then a waiver would never be valid if a good claim is lurking in the case, as opposed to a worthless claim. And that would essentially do away with the waiver, because in every case we'd be looking to see, was there a valid claim? And if so, then it — all bets are off, and the waiver is not to be afforded any effect. Well, there's two issues here. So putting aside that his own lawyer agreed to it, the real issue starts with, did Mr. — did Jose understand what he was getting into? So we have two things that are at question. What's in the plea agreement? And then what happens at the Rule 11 colloquy? Not much. And not much happened at that colloquy. The judge said, and do you understand that according to your written plea agreement, you're giving up your right to appeal your conviction and sentence? Now, the Court gave us direction in an order to look at four other cases. One of them was the one I discussed a moment ago. Right. The other ones I have pulled up and given to this Court, the colloquies that occurred in those cases, and those cases provide a good comparison. In Rodriguez, the judge went through at length that his lawyer had negotiated different agreements, different ranges, and he said, if the judge accepts your plea agreement and imposes a sentence consistent with the levels that apply to you, then your agreement to appeal sentences to a higher court, you agree not to file a petition contesting the validity of the conviction or the correctness of the sentence. If you did appeal, the United States attorney reserves the right to withdraw from the agreement. In that case, that's a valid waiver, given the colloquy that occurred. But in our colloquy, which is just a court of law. Could I just interrupt you to make sure that we're on the same page with one thing, and that is, can a waiver, if otherwise valid, waive a good claim as well as a bad claim? In other words, the mere fact that you find a winning argument later, does that invalidate an otherwise valid waiver? It looks like it does under the Balthazar case. In the Balthazar case, the case that I had referred to earlier, this Court, with you as one of the members, said that the 16-level enhancement was incorrect, and because so, the defendant did not have a crime of violence, so the sentence was not in accordance with the plea agreement. Okay, that isn't actually entirely my question. Is a generic matter, can you waive a good claim as well as a bad claim? I don't think so. I think what Sure you can, so long as it's a Go ahead. I was going to say, sure you can, so long as it's a knowing and intelligent waiver, but this couldn't have possibly been a knowing and intelligent waiver, right? I just don't think that you can, unless you can have, in the colloquy, a discussion like what happened in Rodriguez, and I'm not holding that out to be the sole thing, but in that colloquy, that judge particularly said, and the correctness of the sentence, he specifically said, and he connected the waiver to the correctness of the sentence. And I think that's one of Well, the written agreement does that here. It specifies that you can't complain about your guidelines calculation, for example. Right. But if all we were interested in was what's in the written document, then why would we have Rule 11? Rule 11 is the face-to-face moment. It's a tool by which the judge can assure himself, particularly with a Spanish speaker, that this individual understands what he's getting into. I guess I'm, I look at the plea colloquy, and I see that the judge did go through all of the different contingencies that were there, right? There were basically three different offense levels that could apply, multiple criminal history categories that your client could fall into. The judge goes through and says, you understand that all of that is going to have to be determined by the judge, and then that's going to determine your sentence, right? And then proceeds to say, and you understand that under the terms of this agreement, you are not going to be able to appeal your sentence in any way. And your client says, yes. But I don't know what more, how much more plain it could be that all of those different contingencies that the judge is going to have to resolve, you're not going to have a chance to appeal them, whether you like them or not. Well, but he doesn't say whether, he doesn't, but he never connects it to the correctness of the sentence. That's my problem, is that, is that for it to be knowing, I think he needs to know that what was said at one part of the proceeding, here are all these ranges and ways that we're going to calculate it, and now, do you understand that you're giving up your right to appeal the conviction and sentence? There's no connection between the two. But it's like, what part of no don't you understand? I mean, you have no right to appeal any of this. Do you understand that? After I've already explained to you all the different things that are going to have to go into that. I guess, I'm with you that in that other unpublished case, there was the, there was like an extra sentence that said, you understand that the judge is going to resolve these, and, you know, even if you think that the judge's resolution is incorrect, you're not going to be able to appeal. That didn't happen here, but I guess. So, well, so let me cite you then to another case, and that is Balbuena, where the judge said, do you understand that you're giving up your right to appeal and collaterally attack these convictions? The defendant said yes, and that was found to be an insufficient waiver. So, to me, there's not a big difference between the Balbuena waiver and my case, and there's a big difference between my case and Rodriguez. Well, there's some difference in that here they were separated out between the direct appeal discussion. The judge first asked about giving up direct appeal. Do you understand that? Yes. And then discussed the collateral attack later on. So, you know, that, there's a little bit more detail. Well, and we put great weight in the, in the discussion that the, that his discussion about doing a petition, he then says, petition the correctness of the sentence. But the, but the client is hearing correctness of the sentence, and in his mind, he's like, okay, if the sentence is incorrect, I'm, I'm out of here. Okay. And, and the, the second argument you have is that the sentence was incorrect because this was not a crime of violence. This is not a crime of violence. So you couldn't raise it 16 levels no matter what. And this is one of the problems, of course, appeal waivers have been approved of. I'm encouraging this Court, though, to, to look at other districts, including the District of Columbia has approved of looking at a miscarriage of justice standard. I'm going to try to reserve my 30 seconds of rebuttal here. Okay. We'll give you an extra minute because we've taken a lot of your time with questions. Thank you. Thank you. We'll hear from the government. Good morning, Your Honor. May it please the Court, I'm Chris Cabanillas from the District of Arizona. I would concur with the Court's comments about the nature of the waiver in this case. I would also cite Judge Graber to you in response to your question about whether a waiver applies, whether an argument may be meritorious or not. I would cite a case that we have on page 13 of the answering brief, and that's when, N-G-U-Y-E-N, where it says, under the defendant's view, a waiver of appellate rights would be essentially meaningless. The waiver would be valid if the claims were meritless, but invalid if the claims were meritorious. The whole point of a waiver, however, is the relinquishment of claims regardless of their merit, the word regardless being emphasized in the original. That's only if it's a knowing and intelligent waiver. Yes. And how could this possibly have been a knowing and intelligent waiver? Just look at this level 1 through 6, criminal history 1 through 6. Obviously, it wasn't criminal history 1 through 6. Three possibilities here. None of them are explained in the plea agreement. What's a crime of violence? Not explained. How do you ever get to a level 20? How do you get to a level 12? That I understand. Did he understand? Did his lawyer understand? Why do you draft agreements like this, that you're basically telling this guy, from 4 months to 87 months, we'll figure it out later, and that's all the explanation you're entitled to? It makes no sense. And this kind of plea agreement was criticized by this Court, and Hernandez-Lopez and your office continues to do it again and again and again. Why don't you get the message? Your Honor, I would point out that in Hernandez, the plea was in 2013. This plea was in 2013. Even this plea agreement was changed in the wake of some of that, those cases that the defendant has been citing to, most notably the language that Judge Graber refers to about the guideline determinations, that that makes it more clear that the defendant is waiving sentencing guideline determinations. In addition, we also have what Judge Watford pointed out in the record, that this defendant is advised about the range of the plea. And what this does is it gives also the defense an opportunity to argue for a different level, what he or she believes applies, and then the government does the same thing. And what we're doing is saying, look, you are going to get the benefit of reduction in sentence, and then you waive your right to appeal. And this kind of waiver has been upheld in other cases, not Aguilar-Balbuena, but other ones, and also the language has been changed even more recently. But I would submit to you that the plea agreement was sufficiently clear, the defense attorney avows not only at the change of plea, I believe, but also in the end of the plea agreement, that he's explained it to his client, that also we have the judge. Scaliars have to explain it, too. But the judge did. The judge. Not really. Well, I would disagree, respectfully, Your Honor, and I think that I've taken a lot of pleas. This would not pass muster in my courtroom or any of my colleagues. When you – when the defendant is advised that he can be sentenced from anywhere from 4 months to 87 months under the plea agreement, he's advised about the range of sentence. He's told that there are three potential offense levels. Offense level So would – so would zero to infinity be okay, or zero to life? If life was part of a plea agreement, yes. That would be okay. Really? If the plea agreement allowed for that range, depending on a defendant's That's my point. The plea agreement shouldn't be able to allow for that range. That is not a knowing and intelligent waiver of your right to appeal when you've got a range like that. I respectfully disagree. I guess, Your Honor, again, in this particular case, we have a 1326 defendant who is advised that there is a potential level 24, 20, and 12. Did anybody explain to him why you'd ever get to a level 20? His lawyer will have explained to him the nature of the deal, as well as if the defendant, his prior crime is determined to have Doesn't the lawyer be – isn't the lawyer asked at most pleas, tell me exactly what you told your client about how the guidelines are going to work? It's the way I do it. Your Honor, I guess I would submit that based on this Court's cases, based on the waiver provisions that exist in other cases, the Lopez case is one that I put in my 28-J letter, where it's an unpublished case again, but I looked at the change of plea in the plea agreement, and it's similar to this one, and they found that the waiver was fine. Hernandez-Lopez also, they dropped the footnote, but they said that if we interpret this in accordance with language like the defendant, then you would be swallowing the waiver. So, again, I would submit that the waiver is effective in this case. In addition, we have the defendant specifically agreeing. Do you understand, he asked, do you understand why there's a very broad range of sentences and sentencing possibilities under the plea agreement? The defendant replies, yes, Judge. So, again, we have to take the defendant's avowals in court, and I have some cases in my materials about how a solemn declaration in court is presumed true. So this post, you know, on appeal, first time claiming, hey, I didn't understand this or that, this Court has to credit the statements given on the record. As well as on the heels of that, the defendant is asked, do you understand, according to your written plea agreement, you're giving up your right to appeal your conviction and sentence? Yes, Judge. I understand. So, again, I think that is the case. Breyer. Counsel, hang on one second, though. Just, we have a bunch of unpublished decisions, and I know we're not bound by those, obviously, but there is some tension between the result you'd like us to reach here and at least one of those cases, right? Because it suggests that for one of these plea colloquies to result in a knowing involuntary waiver, the judge does have to connect the dots in the way that your adversary explained. So maybe you can address why you think the result here is important. Well, I think that, again, I think that what we have here would still be consistent with the results we've reached in the past. Well, number one, we have other unpublished decisions that have found differently than the case that counsel cites. And so, again, I think that what we have is several panels reaching different conclusions on similar records, but we have in this case, I think, closer to Lopez-Gramajo. And then also, because, as you noted when you were asking counsel, we have a progression in the questioning. We have an explanation of what the sentence requires and what he — and he understands that the district court's going to consider this and make a determination. And then on the heels of that, we have you understand, you agree, you've waived your right to appeal your conviction and sentence. And the answer is yes. And I submit to you that the progression, the order, as well as the full explanation of what the range of sentences under the plea agreement, he understands, that he's going to be sentenced within this range and he's waiving his right to appeal a sentence. Let me ask you a different question. Sure. If we were to hold that the appeal waiver were not valid, presumably we would be reviewing for plain error. Yes. Correct? Yes, it is. And given the lawyers' express agreement that Level 24 applied and the state of the law in 2013, was any error plain? No. And here's why. First, I would submit the review is plain error. I know that counsel disputes that, but it is. And I cited in my 28-J letter a case called Galindo-Gallegos, where you have a concession. If there's a waiver, then by definition there isn't a list of complaints that were made to the sentencing court. So it would have to be for plain error, it seems to me. If at the very most, I guess I would say, it would be plain error, or at the very least. I don't know if I got that phrase right. But in any event, plain error is the most that the defendant can rely on. And why we don't have it here, number one, as we noted in the answering brief, this particular conviction falls within the generic aggravated assault definition. And I noticed there was no answer to that in the reply brief. Remember, there are two ways in which a prior conviction can be deemed a crime of violence. The first is it can be a specifically enumerated ag assault. And the second is the use of force. And all the discussion about Johnson and Singh and everything else refers to use of force. But you don't even have to get to that. We have a generic ag assault in this particular case, because as noted in Esparza-Herrera and all the other cases, Arizona ag assault is only overbroad if you're convicted of A-1. This defendant's convicted of A-3. There is no possibility of a reckless men's ray in A-3. So it qualifies. But A-3 is not a crime of violence. A-3 is a crime of violence. No, it's not. Is it divisible? That would only apply to the use of force. It does not apply to the generic definition of ag assault. It's divisible A-1H. Was the jury asked the – A-3 says knowingly touching another person, right? With intent to injure, insult, or provoke. Is touching a person with the intent to insult a crime of violence? That's, again, a question for the use of force definition. But for generic ag assault, that doesn't – it doesn't matter, because – It doesn't matter – in other words, the jury, if all 12 jurors thought there was no intent to injure, but only an intent to insult, it's still a crime of violence? This is what I – this is where we are according to this Court's cases. There's generic ag assault, and as long as you are convicted of aggravated assault, then you will fit that definition unless there's a possibility that you could be convicted of reckless conduct. That is the only analysis that applies to the generic ag assault. Is this Court ever – The question about divisibility – oh, I'm sorry, Your Honor. No, you go ahead. Oh, I was going to say, the question about divisibility and Rendon and all that will apply if you get to the use of force and threatened use of force. But you don't have to get there in this case. I guess that's my argument. But this Court has never discussed A-3. It's discussed A-1 and 2, right? It has, yes. It has discussed A-3? No, no, it has. You're correct. But the – I think it's the Sixth or the Eighth Circuit has discussed A-3 and has said something different from what you have said. It did. And I guess if the Court does want to go to use of force, again, you do not have to, because in this case we have a generic ag assault, and that ends it. But if you do choose to go to use of force, I would submit the Eighth Circuit did not reach the right result in this case. If we look at Sahagin-Gallegos in particular, first, I would submit the divisibility issue was not sufficiently raised in the opening brief for it to even be considered. I think I mentioned that in my 28-J letter. So any suggestion about how it's somehow not divisible now, I submit has not been appropriately raised. We turn to then Sahagin-Gallegos, and if you look at footnote 6 of Sahagin-Gallegos, it says the defendant waived any argument that A-1 in that case was not divisible. Then they moved to the modified. And in that case, we observe the defendant's attorney's statement that the defendant acted intentionally was extraneous to the conviction, not here. I mean, I don't remember the last time we've had a change-of-plea colloquy that just tracks that language as clearly as this change-of-plea does. I mean, the defendant, what did he say, his attorney, quote, knowingly touched a police officer who he knew was a police officer with the intent to injure him, period, boom. In addition, we don't have the problem we had in Sahagin because we have the defendant's assent follows right afterwards. Sir, is what your lawyer just told me, is that a true statement? Defendant, yes, Judge. So we have to be careful. Kagan, you have exceeded your time, and I think we understand your position. Oh, excuse me, Your Honor. I'm sorry. That's okay. I didn't notice the red light was on. I know. That's good. That means you were concentrating on what you were saying. Okay. So we appreciate that. Forgive me for that. I'd ask the Court to affirm, then. Thank you. Ms. Thurp, we'll give you an extra minute because we used so much of your time. Thank you. So just to follow where Ms. Kabani has left off, basically the change of plea transcript in the prior conviction, the Maricopa case, is almost irrelevant in this case because it is absolutely clear that he was convicted of A-3. It's in a minute entry, and it's in the information where he pled to the count. He didn't plead to any amended count. So the information specifically tracks A-3, and the change of plea minute entry says A-3. So the government is using that colloquy for purposes that DeKalb said you can't, which is to figure out what the facts are, to figure out what really happened. They're trying to narrow his attorney's statement, intent by touching with the intent to injure, as limiting your inquiry. But your inquiry is what is A-3, and A-3 is touching with the intent to injure, insult, or provoke. It is not a crime of violence. As to the plain error standard, I mean, this mistake by his lawyer is an error. It's plain. It affects the substantial rights because he would have gotten. Sotomayor, you said the mistake by the lawyer. Are we looking at what the court did? Yes, I'm sorry, of the court. Because there was an error. It shouldn't have been held as a crime of violence. The analysis that it goes into, the crime of violence thinking is obvious. It's known. The rights are substantial because the difference is between a 55-month sentence and a 21-month sentence, which is what it was under the guidelines. And then finally, the last aspect of plain error is discretionary with you to correct a situation that seriously affects the fairness, integrity, or public reputation of the judicial process. And I would submit that ineffective assistance falls in that range. Failure of a judge to do his own analysis, which it appears in the sentencing, did not occur. The differences of two years. The sentencing difference here is two years. Thank you, counsel. Thank you. We appreciate very much the arguments of both counsel. They've been very helpful. The case is submitted.
judges: Friedman, Graber, Watford